have the books and should be able to correct the account therefrom; but it is possible that the evidence for the correction of the statements alleged to have been delivered to plaintiff may not be shown by the books. Ordinarily, where on the trial of an action at law it is necessary to examine books of account to determine the profits of a business and to ascertain therefrom the amount to which the plaintiff claims to be entitled, the issues are not referable; but in exceptional cases, where it is shown to be·impossible for a jury to intelligently determine the issues on account of the accounting by which the amount owing is to be determined, the issues may be referred. Rowland v. Rowland, 141 N. Y. 485, 36 N. E. 504; Boisnot v. Wilson, 95 App. Div. 489, 88 N. Y. Supp. 867. The burden of showing this, however, is on the party moving for the reference. McAleer v. Sinnott, 30 App. Div. 318, 51 N. Y. Supp. 956; Spence v. Simis, 137 N. Y. 616, 33 N. E. 554. We are of opinion that the defendants have failed to show that this is an exceptional case in which on·account of such examination of the accounts of the business of the defendants the issues cannot be intelligently tried before a jury. If upon the trial the contrary should appear, it would be within the province of the trial court to discharge the jury and refer the issues.

It follows, therefore, that the order should be reversed with $10 costs and disbursements, and the motion denied with $10 costs. All concur.

---

### PENUNZIO v. CENTRAL R. CO. OF NEW JERSEY.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

MASTER AND SERVANT (§ 279*)—EVIDENCE—SUFFICIENCY—NEGLIGENCE OF FELLOW SERVANT.

Evidence examined, and *held*, that a verdict for an employé for personal injuries, if predicated on the incompetency of a coemployé, was not supported by the evidence, and, if predicated on his negligence, was against the weight of the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–980; Dec. Dig. § 279.*]

Appeal from Trial Term, New York County.

Action by Michael Penunzio against the Central Railroad Company of New Jersey. From a judgment for plaintiff and from an order denying new trial, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, MILLER, SCOTT, and DOWLING, JJ.

Robert Thorne, for appellant.

John F. McIntyre (Joseph A. Shay and L. F. Fish, on the brief), for respondent.

LAUGHLIN, J. This is an action to recover damages for personal injuries sustained by plaintiff while in the employ of the defendant as an engine cleaner. The plaintiff alleges that the injuries were caused by the failure of the defendant to employ a competent engi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

neer to operate the engine on which he was riding and by the negligence of the engineer.   In so far as the plaintiff predicates his cause of action on the negligence of the engineer, it is based on a statute of New Jersey known as the "Employer's Liability Law," which clearly, and it is conceded, renders the defendant liable to an employé for injuries sustained by the negligence of the person operating a locomotive engine.   Engineers of passenger trains in the employ of the defendant on the completion of their trips delivered their engines at what is known as "the Fiddlers' Yard" in Jersey City, N. J., and an employé known as a hostler then took charge of each engine to move it about the yard to the water tower to fill the tank with water, to the ash pit where the hostler removed the ashes and cleaned the fire, and to the coal shute to obtain a supply of coal, and to the turntable, evidently to turn the engine about, and to prepare it to be taken from the yard in the opposite direction from that in which it came.   The custom was for the foreman of the engine wipers to give to the plaintiff a list, by numbers, of certain engines coming into the yard, and it was plaintiff's duty to wipe the tenders of such engines while they were stationary at these different places in the yard, and for that purpose he rode on the engine when it was to be moved from one place to another.   Before starting, the hostler, who operated the engine, would give plaintiff and others notice that he was to move the engine by sounding the whistle, and it was customary for plaintiff then, and according to his testimony it was his duty, to take a position standing on a step near the pilot at the front of the engine and ride until the engine stopped again, when it was his duty to resume the work of cleaning the tank.   Plaintiff used a stick with waste attached to enable him to clean the tank above the reach of his hands. Shortly before the accident he was engaged in cleaning the tank of engine 626 at the water tower.   After the engine had taken water, the hostler signaled that he was to move the engine forward, and plaintiff took his customary position on the step near the pilot, placing his stick with the waste on the front of the engine, and facing forward and taking hold with both hands behind him of a handlebar evidently constructed to enable those riding on the engine to hold on, and the engine started towards the turntable, a distance of about or a little more than 300 feet.   The plaintiff testified that the engine proceeded at about the speed that a man ordinarily walks until it reached a slight curve in the track near and before reaching the turntable; that then the hostler let on "a great deal of steam,  *   *   *   and then it gave me suddenly a jerk, and I fell"; that the engine went around the curve at about 30 miles an hour, or about three times as fast as it usually traveled in the yard; that the engine "shook" and "was trembling all over, and consequently I myself, too, was trembling by the motion of the engine"; and that "I fell first with my feet, and consequently I lost my hold upon the handle."

The hostler in charge of the engine at the time testified through an intepreter that he was born in Russian Poland, where he was a farmer; that he had been in this country about eight years, and during the first four years had worked in a coal yard; that during the last four years he had worked for the defendant in this yard and the last three

years before the accident he cleaned and attended to the fires and led engines, and performed these duties under the instructions of a hostler who remained in the cab until he learned the work. The contention that the hostler was incompetent is based on this evidence and on the further facts that he never otherwise learned the trade of a locomotive engineer; that he could not speak English very well, although he was able to converse with his fellow workmen sufficiently, and that he testified that he did not know what a valve or piston rod was, but that he understood "everything about the engine," and that he knew what a cylinder and driving rods and lever were, and their functions, and how to let on steam and to shut off the steam and the effect thereof. On this evidence the court was duly requested by the counsel for the defendant to instruct the jury that the evidence did not show that the hostler was incompetent to move the engine around the yard in question. The request was refused and an exception was duly taken.

I am of opinion that this was error. The jury may well have been misled by the failure of the court to so instruct them. The evidence would not warrant a finding that the hostler was not competent to operate the engine to the limited extent necessary for the purposes stated. He knew how to let on steam and the effect of letting it on slowly or rapidly and how to shut it off and the effect thereof, and how to move the lever to go ahead and to go backward. There is nothing to indicate that the accident was in any manner caused by his inability to understand how to operate the engine. Moreover, the question of incompetency of an employé is only important as depriving the defendant of the defense that the accident was caused by the negligence of a coemployé. If a coemployé whose negligence causes an accident was incompetent, and his incompetence was known or should have been known to his employer, then the employer is liable for his acts, but otherwise not at common law. In the case at bar, however, by virtue of the provisions of the statute, the defendant was precluded from defending on the ground that the negligence, if any, was that of a coemployé; and it became liable for the acts of the hostler, if negligent, regardless of the question of his competency. The only proper question for the consideration of the jury with respect to defendant's negligence in such case, therefore, was whether the engine was negligently operated; and in determining that question it was quite immaterial whether or not the hostler was competent, for, if he was competent, the defendant would be liable if he negligently operated the engine.

The plaintiff rested his case on his own uncorroborated testimony. On the part of the defendant several witnesses testified that the engine was moved at a moderate rate of speed, and that there was no change in the speed as it approached the curve, and the hostler and the man in charge of the turntable testified that plaintiff was moving about on the pilot, and lost his balance and fell. The evidence shows that the engine was close to the turntable, on which it would naturally come to a stop for the purpose of being turned around, when the accident happened, and that it only moved about eight feet after the accident before stopping. If the verdict is predicated on the incom-

petency of the hostler, it is not supported by the evidence; and, if predicated on his negligence, it is against the weight of the evidence.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

SCOTT, MILLER, and DOWLING, JJ., concur.

INGRAHAM, P. J. I concur with Mr. Justice LAUGHLIN, but I also think the judgment should be reversed on the ground that the evidence does not sustain a finding that the defendant or the man operating this locomotive was negligent.

There are various conclusions drawn by the plaintiff in his testimony as to the speed of the engine, but I do not think there was satisfactorily established any fact that would justify a finding that the speed was excessive under the circumstances or that the plaintiff's fall from the engine was caused by any failure of the person operating it to exercise care in its management. On the whole case I think at the close of the defendant's testimony a verdict should have been directed for the defendant.

